UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
FRIENDS OF THE EAST HAMPTON AIRPORT, INC.,
ANALAR CORPORATION, HELICOPTER ASSOCIATION
INTERNATIONAL, INC., HELIFITE SHARES LLC,
LIBERTY HELICOPTERS, INC., and SHORELINE          MEMORANDUM & ORDER
AVIATION, INC.,                                   15-CV-0441(JS)(ARL)

                        Plaintiffs,

            -against-

THE FEDERAL AVIATION ADMINISTRATION and
MICHAEL P. HUERTA, FAA Administrator,
in his official capacity,

                        Defendants.
------------------------------------------X
APPEARANCES
For Plaintiffs:          Jonathan Daniel Lamberti, Esq.
                         Matthew Gage Coogan, Esq.
                         Helen A. Gredd, Esq.
                         Michael Dayton Longyear, Esq.
                         Lisa R. Zornberg, Esq.
                         Lankler Siffert & Wohl LLP
                         500 Fifth Avenue, 34th Floor
                         New York, NY 10110


For Defendants:          Robert W. Schumacher, II, Esq.
                         U.S. Attorney's Office
                         Eastern District of New York
                         610 Federal Plaza
                         Central Islip, NY 11722


For Interested Party:    William E. Pilsk, Esq.
Town of East Hampton     Kaplan Kirsch & Rockwell
                         1001 Connecticut Ave., NW, Ste. 800
                         Washington, DC 20912


For Interested Party:    Thomas P. Ogden, Esq.
Committee To Stop        Joanna H. Schorr, Esq.
Airport Expansion        William F. Dahill, Esq.
                         Woolmath Maher & Deutsch LLP
                         500 Fifth Avenue
                         New York, NY, 10110

Sheila Jones, Esq.
Law Office of Sheila Jones
P.O. Box 42532
Washington, D.C. 20015

SEYBERT, District Judge:

Presently pending before the Court are motions to intervene filed by non-parties the Committee to Stop Airport Expansion, Pat Trunzo, Jr., and Pat Trunzo III (collectively, the "Committee") and the Town of East Hampton (the "Town"). (Docket Entries 24, 39.) For the following reasons, the motions to intervene are GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

Plaintiffs Friends of the East Hampton Airport, Inc. ("FOEHA"), Analar Corporation ("Analar"), Helicopter Association International, Inc. ("Helicopter Association"), Heliflite Shares LLC ("Heliflite"), Liberty Helicopters, Inc. ("Liberty"), and Shoreline Aviation, Inc. (collectively, "Plaintiffs") commenced this action against the Federal Aviation Administration ("FAA") and its administrator, Michael P. Huerta ("Huerta" and collectively, "Defendants") seeking declaratory and injunctive relief with respect to the East Hampton Airport (the "Airport"), a "public-use, federally funded airport" that is owned, operated, and sponsored by the Town. (See generally Compl., Docket Entry 1, ¶ 42.) FOEHA is a non-profit corporation that "represents the interests of local regional fixed wing aircraft and helicopter

owners, operators, lessors, pilots and their passengers and customers and local businesses that seek to keep [the] Airport open to all types, kinds and classes of aircraft activities and flying services . . . ." (Compl. ¶ 11.) The remaining Plaintiffs are charter operators that frequently use the Airport and a trade association with members that provide helicopter services at the Airport. (Compl. ¶¶ 12-16.)

I. Factual Background[1]

On September 25, 2001, the Town accepted a federal grant of $1,410,000 pursuant to the Airport Improvement Program ("AIP") for the development of the Airport. (Compl. ¶¶ 25, 46.) Upon its acceptance of the grant, the Town was required to comply with certain grant assurances for twenty years from the date of the Town's acceptance of federal funds.[2] (Compl. ¶¶ 29, 47-48.) One such grant assurance provides that "'the airport will be available for public use on reasonable conditions and without unjust discrimination,'" (the "Public Use Grant Assurance") (Compl. ¶¶ 29, 47 (quoting 49 U.S.C. § 47107(a)(1)).)

In or about 2003, the Committee commenced an action against the FAA and Department of Transportation challenging the

---

[1] The following facts are taken from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[2] Thus, the Town was required to comply with certain grant assurances until September 25, 2021.

FAA's approval of the Town's 2001 airport layout plan (the "Layout Plan Action").[3] (Compl. ¶ 50.) In 2005, the parties to the Layout Plan Action executed a settlement agreement in which the FAA agreed not to enforce certain grant assurances, including the Public Use Grant Assurance, with respect to the Airport after December 31, 2014 (the "Settlement Agreement"). (Compl. ¶ 53.) However, the Settlement Agreement provides that all grant assurances will be enforced if the Town is awarded additional AIP funding. (Compl. ¶ 54.)

In or about December 2011, United States Representative Timothy Bishop submitted a list of questions to Huerta with respect to "the FAA's position on the legal effect of the 2005 Settlement Agreement on the FAA, and on [the Town's] ability to impose airport access and noise restrictions after December 31, 2014." (Compl. ¶¶ 63-64.) In or about 2012, the FAA provided written responses to Bishop's inquiries (the "Bishop Responses"). (Compl. ¶ 65.) The Bishop Responses state that: (1) the FAA considers itself legally bound by the Settlement Agreement; (2) the Settlement Agreement waives the FAA's enforcement of certain grant assurances and also waives the Town's obligation to comply with those grant assurances after December 31, 2014; (3) after December 31, 2014,

---

[3] The Layout Plan Action also named Norman Minetta, Secretary of Transportation, and Marion Blakey, Administrator of the FAA, as defendants. (See Compl., No. 03-CV-2634, Comm.'s Ex. A., Docket Entry 25-7.)

the FAA will not enforce the grant assurances or adjudicate any administrative complaints regarding the Town's violation of the grant assurances unless the Town receives a new AIP grant; and (4) the FAA interprets the Settlement Agreement to relieve the Town from its obligation to comply with the Airport Noise and Capacity Act of 1990 ("ANCA") regarding proposing new airport noise and access restrictions unless the Town desires to remain eligible for the receipt of future federal funding grants. (Compl. ¶ 67.)

Plaintiffs allege that by entering into the Settlement Agreement, the FAA exceeded its statutory authority and violated its statutory obligations. (Compl. ¶¶ 3-4.) As a result, Plaintiffs seek the following relief in this action: (1) a declaration that (a) Defendants are statutorily obligated to ensure that the Town is in compliance with certain grant assurances until September 25, 2021, (b) the Settlement Agreement and/or the Bishop Responses are not a lawful basis for Defendants' determination as to "whether and how" it will enforce certain grant assurances or adjudicate administrative complaints with respect to the Airport, (c) "Defendants' stated position that [the Town] is not required to comply with ANCA unless it wishes to remain eligible for federal funding is contrary to law"; and (2) an injunction directing Defendants to comply with the previously noted declarations. (Compl. at 25.)

## II.  The Town Action

On April 21, 2015, FOEHA, Analar, Helicopter Associates, Heliflite, Liberty, and other air carriers commenced an action against the Town seeking declaratory and injunctive relief enjoining enforcement of certain provisions of the Town of East Hampton Code that impose access restrictions on the Airport (the "Town Laws").  Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton, No. 15-CV-2246, 2015 WL 3936346 (E.D.N.Y. June 26, 2015) (the "Town Action").  The Town Laws were adopted on April 16, 2015, after the Town received the Bishop Responses.  Id. at *2-5.  In the Town Action, Plaintiffs allege that the Town Laws are invalid because: (1) they are preempted by ANCA and the AAIA and thus violate the Supremacy Clause of the Constitution; and (2) they violate the Commerce Clause of the Constitution as an unlawful restraint on interstate commerce.  Id. at *6.

In May, 2015, Plaintiffs filed a motion seeking to enjoin enforcement of the Town Laws pending the resolution of the Town Action and this action, arguing that the Town Laws violate and are preempted by ANCA and the Airport and Airway Improvement Act of 1982 ("AAIA"), and that Plaintiffs will be irreparably harmed due to the "incalculable damages and severe economic losses" that will result from compliance with the Town Laws.  Id. at *1-2. Plaintiffs' motion was granted in part and denied in part.  Id. at *18.

Plaintiffs also filed a motion to consolidate the Town Action and this action (the "Consolidation Motion"), arguing that both actions share common questions of law and fact that include "(i) the Town's obligation to comply with, and the FAA's obligation to enforce, certain federal aviation laws with regard to East Hampton Airport; and (ii) the effect (if any) of a 2005 settlement on those statutory obligations." (Pls.' Consolidation Mot., Town Action, Docket Entry 14, at 2.) The Town opposed the Consolidation Motion, alleging that consolidation would not promote judicial efficiency and that "there are no common issues of fact or law that can be more efficiently addressed in a consolidated proceeding." (Town's Consolidation Opp., Town Action, Docket Entry 35, at 1-2.) The Town argued that consolidation was premature as the FAA had not yet appeared and might seek to dismiss the action. The Town also alleged that even if Plaintiffs were successful in this action, such a determination would not render the Town Laws unconstitutional, as "the question of compliance with laws is independent of whether the laws are preempted." (Town's Consolidation Opp. at 2.) The Court reserved judgment on the Consolidation Motion pending the FAA's response to the Complaint in this action. Friends of E. Hampton, 2015 WL 3936346, at *18. Plaintiffs subsequently withdrew the Consolidation Motion. (See Town Action, Electronic Order dated August 24, 2015.)

III.  The Committee's Motion

On May 27, 2015, the Committee filed a motion to intervene in this action pursuant to Federal Rule of Civil Procedure 24(a).  (See Comm.'s Mot., Docket Entry 24.)  In a footnote, the Committee moves alternatively for permissive intervention under Federal Rule of Civil Procedure Rule 24(b). (Comm.'s Br., Docket Entry 25, at 10, n.10.)  The Committee argues that as a party to the Settlement Agreement, it has an interest in this action because Plaintiffs are asserting that the FAA is statutorily required to enforce the grant assurances notwithstanding its representation in the Settlement Agreement that it would not enforce four grant assurances after 2014. (Comm.'s Br. at 6.)  The Committee argues that its ability to file suit against the FAA for breach of contract or otherwise invoke the protections of the Settlement Agreement will be compromised should Plaintiffs prevail in this matter.  (Comm.'s Br. at 7.) Additionally, the Committee argues that its "interest in preserving the Settlement Agreement is not being adequately represented in this action."  (Comm.'s Br. at 7-8.)

A.  Plaintiffs' Opposition

Plaintiffs oppose the Committee's motion and argue that the Committee is not a necessary party and its interest is not "direct nor substantial enough to warrant intervention as of right."  (Pls.' Comm. Br., Docket Entry 29, at 6.)  Plaintiffs

aver that this action pertains to statutory questions and does not seek to set aside the FAA Settlement Agreement; instead, Plaintiffs "seek[ ] a declaration that, regardless of the [Settlement Agreement's] provisions, the FAA cannot be handcuffed from performing the statutorily mandated duties dictated by Congress." (Pls.' Comm. Br. at 7.)  Moreover, Plaintiffs allege that if this action results in the FAA failing to abide by the Settlement Agreement, any harm to the Committee would be the result of the FAA's agreement to a settlement term that it was not legally permitted to agree to.  (Pls.' Comm. Br. at 8.)

Plaintiffs also argue that even if they prevail in this action, the Committee's interest in the Settlement Agreement will not be immediately impacted and any subsequent impact on the Committee is "too speculative and remote" and contingent on multiple events. (Pls.' Comm. Br. at 9.)  Additionally, Plaintiffs allege that this action will not inhibit the Committee's ability to sue the FAA for breach of the Settlement Agreement.  (Pls.' Comm. Br. at 10.)  Finally, Plaintiffs aver that the Committee's argument that the FAA's defense will be "tepid" is premature as the FAA has not yet responded to the Complaint or asserted its views of the Settlement Agreement.[4]  (Pls.' Comm. Br. at 12.)

---

[4] The Court notes that after the Committee's motion was fully briefed, the FAA filed an Answer as well as an Amended Answer. (Docket Entries 34 and 35.)

Plaintiffs also argue that the Committee should not be granted permissive intervention as its involvement in this action will result in multiplied briefing and "collateral fact issues" as well as "distraction and delay." (Pl.'s Comm. Br. at 12.)

IV.  The Town's Motion

On September 1, 2015, the Town filed a motion to intervene in this action, arguing that it is entitled to intervene as of right or, alternatively, to permissively intervene. (Town's Mot., Docket Entry 39.)  The Town argues that its interest in this action is significant because Plaintiffs seek to invalidate the FAA's position that (1) it is not required to enforce certain grant assurance requirements against the Town, and (2) the Town was not required to comply with ANCA's procedural requirements prior to passing the Town Laws.  (Town's Br., Docket Entry 39-1, at 5.) Similarly, the Town avers that if Plaintiffs are successful in this action, its ability to defend the Town Laws in the Town Action will be impaired based on the principle of stare decisis.  (Town's Br. at 6-7.)  The Town also argues that its interests will not be adequately represented in this action in light of the FAA's support for Plaintiffs' temporary injunction in the Town Action.  (Town's Br. at 7.)  Alternatively, the Town argues that the Court should grant permissive intervention based on its "direct stake" in the Court's determination of the questions of law raised by Plaintiffs

regarding the FAA's statutory interpretation and the Town's legal obligations. (Town's Br. at 8.)

A. <u>Plaintiffs' Opposition</u>

Plaintiffs argue that the Town should be held to its previous position with respect to the Consolidation Motion that its participation in this action is "unnecessary and unwarranted." (Pl.'s Town Br., Docket Entry 42, at 1.) Plaintiffs aver that the Town's change in its position is "gamesmanship" that should not be countenanced. (Pls.' Town Br. at 3.) Additionally, Plaintiffs argue that the Town's opposition to the Consolidation Motion concedes that "any harm to its interest would be contingent on other events occurring <u>after</u> a finding in Plaintiffs' favor." (Pls.' Town Br. at 3 (emphasis in original).) Finally, Plaintiffs argue that permitting the Town to intervene will result in "delay, complication, and unnecessary briefing," as the Town has already extensively briefed its position regarding the Bishop Responses in the Town Action. (Pls.' Town Br., at 5.)

DISCUSSION

I. <u>Intervention as of Right</u>

Federal Rule of Civil Procedure 24(a)(2) provides, in relevant part, that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as

a practical matter impair or impede the
movant's ability to protect its interest,
unless existing parties adequately represent
that interest.

Fed. R. Civ. P. 24(a)(2). Thus, a motion to intervene as of right
will be granted where the movant demonstrates: (1) timeliness of
the motion; (2) the movant's interest relates to the property or
transaction that constitutes the subject of the action; (3) absent
intervention, the movant's ability to protect its interest will be
impaired or impeded; and (4) the parties to the action do not
adequately represent the movant's interest. MasterCard Int'l Inc.
v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006).
"Failure to satisfy any one of these requirements is a sufficient
ground to deny the application." In re Pandora Media, Inc., No.
12-CV-8035, 2013 WL 6569872, at *5 (S.D.N.Y. Dec. 13, 2013)
(internal quotation marks and citation omitted; emphasis in
original). In reviewing a motion to intervene, the Court accepts
the motion's non-conclusory allegations as true. Aristocrat
Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 348,
352 (S.D.N.Y. 2009).

    A.   MasterCard Decision

        Both Plaintiffs and the Committee rely on the Second
Circuit's decision in MasterCard to support their arguments. (See
Pls.' Comm. Br. at 5-9, Comm.'s Br. at 7.) The MasterCard action
was filed by MasterCard against FIFA, the international governing

body of soccer that organizes the World Cup tournament. MasterCard, 471 F.3d at 380. MasterCard entered into a contract with FIFA in which it received the "first right to acquire exclusive sponsorship rights in its product category for the FIFA World Cup event in 2010 and 2014." Id. (internal quotation marks omitted). After Visa publicly announced a contract with FIFA for World Cup exclusive sponsorship rights through 2014, MasterCard filed an action against FIFA for breach of contract and injunctive relief enjoining FIFA from performing under the Visa Contract and directing FIFA to perform its obligations under the MasterCard contract. Id. at 380-81. Visa subsequently filed both a letter motion to dismiss pursuant to Federal Rule of Civil Procedure 19[5] as well as a motion to intervene pursuant to Rule 24. Both motions were denied by the district court, which held that Visa was not a necessary party. Id. at 381-82.

In affirming that Visa was not a necessary party, the MasterCard Court held that: (1) notwithstanding the inevitability

_____

[5] Rule 19(a)(1) provides that an individual who is subject to service of process and whose joinder will not result in the absence of subject matter jurisdiction must be joined as a party where: (A) complete relief cannot be accorded among the existing parties in the person's absence, or (B) the person possesses an "interest relating to the subject of the action" and the disposition of the action in the individual's absence may (i) "impair or impede the person's ability to protect the interest" or (ii) leave the existing parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1).

of future litigation should MasterCard prevail, "Visa's absence will not prevent the district court from granting complete relief between MasterCard and FIFA"; (2) if MasterCard prevails, Visa's contract will not be rendered invalid and "the harm Visa may suffer is not caused by Visa's absence from this litigation"; and (3) any risk of inconsistent obligations in the event that Visa sues FIFA and both Visa and MasterCard prevail in separate actions would not be the result of Visa's absence from this action but "the result of FIFA allegedly breaching its contract with MasterCard and awarding Visa sponsorship rights it was contractually prohibited from granting." Id. at 385-88 (emphasis in original). The MasterCard Court also affirmed the denial of Visa's motion to intervene based on untimeliness and the principle that a party that is not necessary pursuant to Rule 19(a) cannot satisfy the requirements for intervention as of right. Id. at 389-91.

   B.   The Committee's Motion

      As the timeliness of the Committee's motion is not disputed, the Court will address the remaining Rule 24(a)(2) factors in turn. (See Pls.' Comm. Br. at 2.)

      1. Interest Relating to the Subject of the Action

      The determination of the subject of this action presents a closer issue. As previously noted, the Committee alleges that the Settlement Agreement constitutes the subject of this action while Plaintiffs aver that this is an action for a declaration

14

regarding the FAA's statutory obligations.  While the Committee seeks to style this action as one to set aside or "gut" a contract, the Court disagrees.  The crux of this action is the FAA's alleged failure to enforce the grant assurances against the Town and its position that the Town need not comply with ANCA; thus, the Committee's assertion that "'in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable,'" is misplaced.  (Comm.'s Br. at 6 (quoting Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 700-01 (2d Cir. 1980).)

However, the "transaction" that led to the FAA's non-enforcement is the Settlement Agreement in which the FAA agreed that it would not, under certain circumstances, enforce certain grant assurances after December 31, 2014.  Plaintiffs attempt to distance this action from the Settlement Agreement by emphasizing that they are seeking declaratory relief; however, the requested declaratory judgment specifically references the Settlement Agreement.  (Compl. at 25.)  Should Plaintiffs prevail in this action, the Court will enter a declaratory judgment stating that "[n]either the 2005 Settlement Agreement nor Defendants' interpretation of that Agreement in the Bishop Responses can be a lawful basis, in whole or in part, for Defendants' prospective determination of whether and how to enforce the Nondiscrimination Grant Assurances or adjudicate administrative complaints regarding

15

[the] Airport."[6]  (Compl. at 25.)  As Plaintiffs are specifically
requesting that the Court enter a declaration that determines the
applicability of the Settlement Agreement, it is clear that the
Settlement Agreement constitutes, at the very least, a component
of the subject of this action.

Nevertheless, to state a cognizable interest under Rule
24(a)(2), the Committee must demonstrate that such interest is
"'direct, substantial, and legally protectable.'"  Brennan v.
N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) (quoting
Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,
922 F.2d 92, 97 (2d Cir. 1990)).  "'An interest that is remote
from the subject matter of the proceeding, or that is contingent
upon the occurrence of a sequence of events before it becomes
colorable, will not satisfy the rule.'"  Brennan, 260 F.3d at 129
(quoting Washington, 922 F.2d at 97).  As noted by Plaintiffs, any
harm to the Committee, i.e. the Settlement Agreement being breached
and/or invalidated, is contingent upon a series of events--namely,
"Plaintiffs prevailing in this action and the FAA or an airport
operator prompting an administrative investigation of grant
assurance violations by the Town and the FAA finding a violation

---

[6] The Complaint defines "Non-Discrimination Grant Assurance" to
encompass the Public Use Grant Assurance and an additional grant
assurance that provides that the Town "may establish such
reasonable, and not unjustly discriminatory conditions to be met
by all users of the airport as may be necessary for the safe and
efficient operation of the airport."  (Compl. ¶ 53.)

<u>and</u> the FAA taking enforcement action in a manner deemed by the Committee [ ] to breach . . . the 2005 settlement agreement." (Pls.' Comm. Br. at 9 (emphasis in original).)  The Court concurs that this level of contingency weighs against a finding that the Committee's interest in this action is "direct."  Indeed, while the Court acknowledges that a declaration that the FAA is statutorily obligated to ensure the Town's compliance with the grant assurances could potentially support the invalidation of all or a portion of the Settlement Agreement, such a declaration will not have an immediate or direct effect on the Settlement Agreement. As noted by Plaintiffs, the FAA would have to breach the Settlement Agreement, <u>i.e.</u> enforce the grant assurances, before the Committee's interest in upholding the agreement is implicated.

Moreover, although the Court is mindful that intervention motions "tend[ ] to resist comparison to prior cases," the Committee, like Visa in the <u>MasterCard</u> action, is not a necessary party to this action as the Court will be able to grant complete relief in the Committee's absence; any resulting harm to the Committee will not be caused by its absence from this litigation; and any potentially inconsistent obligations on the part of the FAA would be the result of the FAA's agreement to provisions in the Settlement Agreement that it could not legally agree to.  <u>Aristocrat Leisure</u>, 262 F.R.D. at 351-52; <u>MasterCard</u>,

471 F.3d at 389.  Thus, the Committee has failed to demonstrate a direct interest in the subject of the action.[7]

### 2. Impediment to the Ability to Protect Interests

Whether the Committee's interests will be impeded by a disposition in favor of Plaintiffs also presents a close question. As previously noted, this action will not determine the validity of the Settlement Agreement and a determination in favor of Plaintiffs will not render the Settlement Agreement void or preclude the Committee from suing the FAA for breach of contract. However, this action will determine whether the FAA is statutorily obligated to enforce the grant assurances.  Should the Court rule in favor of Plaintiffs, the stare decisis effect of the Court's declaration will impede the Committee's ability to argue, in a separate breach of contract action, that the FAA must forbear in enforcing certain grant assurances after December 31, 2014, pursuant to the Settlement Agreement.  See Sackman v. Liggett

---

[7] Plaintiffs also argue that the Committee's interest in ensuring that the FAA complies with the Settlement Agreement is "not a legally protectable interest" because the United States has not waived sovereign immunity for lawsuits seeking the specific performance of a contract.  (Pls.' Comm. Br. at 11.)  In light of the Court's determination that the Committee has failed to establish a direct interest in the subject of the action, the Court need not determine whether the Committee's interest is "legally protectable."  (See Pls.' Comm. Br. at 10-11.) Parenthetically, the Court notes that Plaintiffs do not dispute that the Committee would be entitled to commence an action against the United States in the Court of Federal Claims for breach of contract seeking monetary damages.  (Pls.' Comm. Br. at 10.)

Group, Inc., 167 F.R.D. 6, 21 (E.D.N.Y. 1996) (Noting that the Second Circuit has held that "the stare decisis effect of a court's decision is sufficient to demonstrate the requisite impairment of an interest to support a motion to intervene.") (citing Oneida Indian Nation of Wis. v. State of N.Y., 732 F.2d 261, 265 (2d Cir. 1984); N.Y. Public Int. Research Group, Inc. v. Regents of Univ. of State of N.Y., 516 F.2d 350, 352 (2d. Cir. 1975)).

The Court concurs with the Committee that its position is dissimilar from that of Visa in the MasterCard action as the MasterCard Court was not charged with determining FIFA's statutory obligations. (Comm.'s Br. at 7.) The court's interpretation of the MasterCard contract would not have stare decisis implications with respect to the interpretation of the contract between Visa and FIFA in a separate action. Thus, the Court finds that the Committee has established that its interest in upholding the Settlement Agreement would be impaired should Plaintiffs succeed in this action.

### 3. Adequacy of Representation

The Court also finds that the Committee has demonstrated that its interests are not adequately protected in this action. The burden of demonstrating inadequacy of representation is generally "minimal," with a "more rigorous showing" being required where the proposed intervenor and an existing party share an identical ultimate objective. Butler, Fitzgerald & Potter v. Sequa

Corp., 250 F.3d 171, 179 (2d Cir. 2001) (internal quotation marks and citation omitted).  While not specifically raised by the Committee, the FAA's silence with respect to the Committee's intervention motion speaks volumes.  Moreover, rather than moving to dismiss the Complaint, the FAA has elected to Answer.  (See Docket Entries 34 and 35.)  While the Court acknowledges that the FAA has not yet asserted a position on the Settlement Agreement and could, in theory, support the validity of the agreement, the FAA's silence to date weighs in favor of a finding that the Committee's interests are inadequately represented.

Nevertheless, the Court DENIES the Committee's request for intervention as of right based on its failure to establish a direct interest in the subject matter of this action.  See Pandora Media, 2013 WL 6569872, at *5 (the failure to establish any one of the Rule 24(a)(2) factors is a sufficient basis for denial of the motion for intervention).

C.  The Town's Motion

The Court will similarly address each Rule 24(a)(2) factor with respect to the Town's motion in turn.

1. Timeliness

At the outset, the Court acknowledges that both Plaintiffs and the Town have ostensibly "flip-flopped" on their prior positions taken with respect to the Consolidation Motion. Plaintiffs moved to consolidate this action and the Town Action,

20

alleging the existence of common issues of law and fact, but now oppose the Town's participation in this action. Similarly, the Town opposed the Consolidation Motion--arguing both that the motion was premature and that a determination in favor of Plaintiffs would not render the Town Laws unconstitutional--but now seeks to intervene in this action as of right.

While Plaintiffs cite to Citizens Against Casino Gambling in Erie Cty. v. Hogen, 704 F. Supp. 2d 269 (W.D.N.Y. 2010), aff'd, 419 F. App'x 49 (2d Cir. 2011), in support of the argument that the Town's motion should be denied based on "gamesmanship," the facts in Hogen are dissimilar to those in this action. (Pls.' Town Br. at 2.) The Hogen Court held that the Seneca Nation of Indians' motion to intervene in an action challenging the legality of a casino operated by the Seneca Nation presented "unusual circumstances" weighing against a finding that its motion was timely. Hogen, 704 F. Supp. 2d at 271, 281-82. Particularly, the Seneca Nation had participated as amicus curiae in earlier actions in which the plaintiffs challenged agency determinations with respect to the Seneca Nation casino; each lawsuit was predicated on the same underlying assertions raised by the Hogen plaintiffs. Id. at 282. The court held that the Seneca Nation should have been previously aware of its interest concerning these issues but chose not to pursue intervention until approximately three years later. Id. The court denied the Seneca

Nation's motion to intervene based, in part, on the untimeliness of the application. Id. at 287.

Although the Court is troubled by the apparent "gamesmanship" on the part of both Plaintiffs and the Town, the Town's inconsistent positions in opposing consolidation and filing a motion to intervene does not rise to the level of "unusual circumstances" that would warrant a finding of untimeliness. Moreover, aside from alleging "gamesmanship," Plaintiffs do not otherwise argue that the Town's motion to intervene is untimely. (See generally Pls.' Town Br.)

### 2. Interest Relating to the Subject of the Action

Plaintiffs also argue that the Town's alleged interest in this action is plagued by contingency. (Pls.' Town Br. at 3.) The Town argues that it has a "significant interest" in this action because if Plaintiffs succeed in this action, the Town Laws and the Town's operation of the Airport will be significantly affected. (Town's Br. at 5-6.) However, as previously noted, the Town conceded in its opposition to the Consolidation Motion that Plaintiffs' success in this action would not render the Local Laws unconstitutional. (Town's Consolidation Opp. at 2.) While the Town now seeks to distance itself from a "double contingency" dilemma by arguing that "because Plaintiffs have framed their constitutional claims in the Town Action to include the very same claims they seek against FAA in this action, any ruling against

FAA could have a direct impact on the Town's ability to defend the [Town] Laws in the Town Action," that argument conflates the second and third Rule 24(a) factors. (Town's Reply Br., Docket Entry 43, at 7.) The Town's interest in upholding the Town Laws is not direct because the invalidation of the Town Laws is contingent on Plaintiffs prevailing in this action and the Town Laws being deemed preempted and/or unconstitutional. Thus, the Town's interest is "contingent upon the occurrence of a sequence of events before it becomes colorable" and does not satisfy the second factor considered with respect to Rule 24(a). See Brennan, 260 F.3d at 129 (quoting Washington, 922 F.2d at 97).[8]

### 3. Impediment to the Ability to Protect Interests

However, the Town has established that absent intervention, its ability to protect its interest will be impaired or impeded. The Town's ability to argue in the Town Action that the Town Laws are neither preempted by ANCA nor unconstitutional would be significantly impeded by the stare decisis effect of a disposition in favor of Plaintiffs in this action. See Sackman, 167 F.R.D. at 21. See also Hartford Fire Ins. Co. v. Mitlof, 193

---

[8] In light of the contingency of the Town's interest in this action, the Court need not address Plaintiffs' argument that the Town does not have a legally protectable "reliance interest" in the Bishop Responses. (Pls.' Town Br. at 3-4.) In any event, the Court disagrees that the Town's asserted interest is in "defend[ing] the correctness of the Bishop Responses"; rather, the Town's interest is in upholding the Town Laws. (Pls.' Town Br. at 3-4; see also Town's Br. at 5-6.)

F.R.D. 154, 162 (S.D.N.Y. 2000) (Holding that stare decisis supported intervention as of right where the proposed intervenor's interests would be impaired by a judgment in plaintiff's favor.) The Town's opposition to Plaintiffs' preemption arguments in the Town Action would be severely undercut by a declaratory judgment that the FAA is statutorily obligated to ensure the Town's compliance with grant assurances; the Settlement Agreement and the Bishop Responses are not a lawful basis for the FAA to determine the enforcement of grant assurances and complaints; and the FAA's position that the Town need not comply with ANCA is contrary to law. Notably, Plaintiffs do not proffer any argument that a favorable judgment would not impede the Town's interest. (See generally Pls.' Town Br.)

### 4. Adequacy of Representation

The Court also finds that the Town has satisfied its "minimal" burden of establishing that its interests are not adequately represented in this action. See Butler, 250 F.3d at 179. As noted by the Town, the FAA filed a letter in the Town Action in which it supported Plaintiffs' application for a preliminary injunction, stating that it desired to "properly consider Plaintiffs' claims and the Town restrictions, develop its position on the issues, and, should the FAA determine that the Town restrictions are contrary to federal law(s) and/or FAA regulations(s)--and/or the Court rule in favor of Plaintiffs in

the FAA Action [No. 15-CV-0441]--commence appropriate enforcement action." (May 4, 2015 Ltr., Town's Mot., Ex. A, Docket Entry 39-1.)

Moreover, during a hearing before the Court on Plaintiffs' motion for a preliminary injunction in the Town Action, counsel for the FAA declined to express a position on the merits, indicated that the FAA needed additional time to determine whether the Town Laws comply with FAA regulations, and stated that "[w]e don't think those Bishop responses in anyway waive the FAA's ability to seek an injunction or to enforce anything under the appropriate regulation." (Tr. of May 18, 2015 Hearing, Town's Mot. at Ex. B., Docket Entry 39-1, at 15:10-20, 16:10-17.) Needless to say, it remains unclear whether the FAA will adequately represent the Town's interest in upholding the Town Laws; specifically, the FAA has not provided any indication as to whether it will take the position that the Town need not comply with ANCA or that the Bishop Responses provide a lawful basis for determining whether grant assurances or complaints will be enforced.

Nevertheless, the Court DENIES the Town's motion to intervene as of right based on its failure to establish a direct interest related to the subject of the action.

II. Permissive Intervention

Federal Rule of Civil Procedure 24(b) provides, in relevant part, that: "[o]n timely motion, the court may permit

anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). The Court's permissive intervention analysis is informed by the same four factors considered in connection with motions for intervention as of right. Certified Multi-Media Solutions, Ltd. v. Preferred Contractors Ins. Co. Risk Retention Group LLC, No. 14-CV-5227, 2015 WL 5676786, at *6 (E.D.N.Y. Sept. 24, 2015). The phrase "claim or defense" is not to be read technically and only requires "some interest on the part of the applicant." Louis Berger Grp., Inc. v. State Bank of India, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). Additionally, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

A.    The Committee's Motion

As addressed above, while the Committee has not established a direct interest in this action, it has established both that a disposition in favor of Plaintiffs will impede the protection of its interests and that its interests are not being adequately represented. Additionally, the Committee's claim that the Settlement Agreement is a valid, binding agreement shares common questions of law and fact with this action--namely, whether the FAA is statutorily obligated to enforce the grant assurances

and whether the Settlement Agreement is a lawful basis for determining enforcement.

The Court also finds that intervention by the Committee will not "unduly complicate" or delay these proceedings. See Washington Elec., 922 F.2d at 98. See also FED. R. CIV. P. 24(b)(3). The Settlement Agreement is specifically referenced in the Complaint and is a component of the subject of this action; thus, the Committee's involvement will not create complications as the Court is already charged with determining whether the Settlement Agreement provides a viable basis for the FAA's non-enforcement. As this action is in its infancy--it was commenced in 2015 and minimal activity has taken place outside the filing of the pleadings and these motions for intervention--the Committee's involvement will not result in delay or prejudice to Plaintiffs.

As set forth infra, the Town has limited its permissive intervention request to the filing of one brief if the FAA fails to adequately represent its interests. The Court finds that a similar limited permissive intervention for the Committee is warranted. The filing of one brief will provide the Committee with the opportunity to present its position to the extent that the FAA fails to take a substantive position or takes a position adverse to the Committee. The Court finds, at this time, that no further involvement on the part of the Committee is warranted or necessary. The Committee may make an application for an expansion

of this grant of permissive intervention if, at a later date, it believes that its further involvement is necessary based on the progression of this litigation.

Accordingly, the Court GRANTS permissive intervention to the Committee to the extent that it will be permitted to file one brief in connection with any dispositive motions.

B.    The Town's Motion

As set forth above, the Town has demonstrated that its ability to protect its interest in upholding the Town Laws will be impaired absent intervention and that its interests are not being adequately represented in this proceeding.  While the Town has not established a direct interest relating to the subject of the action for purposes of intervention as of right, the Town certainly has a claim or defense sharing common questions of law with this action--namely, whether the FAA is statutorily required to ensure that the Town complies with grant assurances, whether the Settlement Agreement or Bishop Responses provide a lawful basis for the FAA to determine whether grant assurances or complaints will be enforced, and whether the Town is legally required to comply with ANCA.

Moreover, the Court finds that the Town's intervention in this action will not create undue delay or prejudice to the existing parties.  The Town is not seeking to inject collateral issues into this action and limits its intervention request "only

28

to the extent that FAA fails to represent its interests and [ ] only for the opportunity to submit one brief if necessary." (Town's Reply Br. at 8.)  Accordingly, the Court GRANTS permissive intervention to the Town to the extent that it will be permitted to file one brief in connection with any dispositive motions.[9]

### C.  Waiver of Pleadings Requirement

Federal Rule of Civil Procedure 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  FED. R. CIV. P. 24(c).  The Court finds that the waiver of the Committee's and the Town's respective pleading requirements is appropriate based on the limitations on the Court's award of permissive intervention and the intervenors' clear expression of their legal positions.  See Blesch v. Holder, No. 12-CV-1578, 2012 WL 1965401, at *2 (E.D.N.Y. May 31, 2012) (Holding that waiver of the pleading requirement was justified where the intervenor's position was clearly set forth in its motion papers.)

### CONCLUSION

For the forgoing reasons, the Committee's motion to intervene (Docket Entry 24) is GRANTED IN PART and DENIED IN PART and the Town's motion to intervene (Docket Entry 39) is GRANTED IN

---

[9] In the interest of minimizing further motion practice on this issue, the Court declines to condition the Town's permission to file one brief on the future adequacy of the FAA's representation.

PART and DENIED IN PART.  The Court GRANTS permissive intervention to the Committee and the Town the extent that they will each be permitted to submit one brief in connection with any dispositive motions.

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    February  29 , 2016
          Central Islip, New York